FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 29, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KARL F. BOYER,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 2:17-CV-00024-SMJ<br><br>**ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION AND DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION** |

Plaintiff Karl Boyer appeals the Administrative Law Judge's (ALJ) denial of his application for Supplemental Security Income (SSI). Boyer argues that (1) the ALJ improperly discredited his symptom testimony; and (2) the ALJ improperly weighed and evaluated certain medical evidence. Because the ALJ gave specific, clear and convincing reasons supported by substantial evidence for rejecting Boyer's symptom testimony, and the ALJ properly weighed and evaluated medical evidence, relying on specific, legitimate, findings supported by substantial evidence, the ALJ's decision is affirmed.

ORDER **-** 1

# I. BACKGROUND[1]

Plaintiff Karl Boyer was born in July 1960. AR 54. He lives in Spokane, Washington, is divorced, and has adult children. AR. 54–55. He has worked as a musician, audio engineer, and telemarketer. AR 55–56, 67, 72–75. He has not worked full time since 2008. AR 203–04. Boyer alleges that he has knee and shoulder pain, high blood pressure, heart arrhythmia, anxiety, and depression, AR 203, and that these conditions limit his ability to lift, squat, stand, reach, walk, sit, kneel, and climb stairs, complete tasks, concentrate, understand, follow instructions, and use his hands. AR 196. Boyer applied for Supplemental Security Income on October 2, 2012, alleging an onset date of November 15, 2009. AR 165–70.

Boyer's application was denied initially in February 2013, and on reconsideration in May 2013. AR 109–16, 124–30. Boyer requested a hearing before an ALJ. Following a hearing held in May 2015, the ALJ issued a decision

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

ORDER - 2

finding Boyer not disabled and denying his application for benefits on June 25, 2015. AR 21–39. Boyer timely appealed to this Court. ECF No. 1.

## II. DISABILITY DETERMINATION

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1,

416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see also Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show 1) the claimant can perform other substantial gainful activity, and 2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## III. ALJ FINDINGS

At step one, the ALJ found that Boyer had not engaged in substantial gainful activity since October 2, 2012. AR 26. At step two, the ALJ found that Boyer had the following severe impairments: degenerative joint disease of the right knee; degenerative disc disease of the cervical spine and lumbar spine; ulnar neuropathy of the left elbow; and obesity. AR 26. At step three, the ALJ concluded that Boyer's impairments did not meet or medically equal any listed impairment. AR 29–30. At step four, the ALJ found that Boyer had the residual functional capacity to lift and/or carry up to thirty pounds occasionally and fifteen pounds frequently, to sit up to eight hours a day, and to stand/walk up to six hours a day. AR 30. Given those limitations, the ALJ found that Boyer was capable of performing his past relevant work as an audio operator, telephone solicitor, and order clerk. AR 33. Because the ALJ found Boyer could perform his past relevant work, she did not move on to step five.

# IV. STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla, but may be less than a preponderance. *Id.* at 1110–11 (citation omitted). Even where the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

# V. ANALYSIS

Boyer challenges the ALJ's step-four residual functional capacity determination on the basis that (1) the ALJ improperly discredited his symptom testimony; and (2) the ALJ improperly weighed and evaluated medical evidence. Because the ALJ gave specific, clear and convincing reasons supported by substantial evidence for rejecting Boyer's symptom testimony, and the ALJ properly weighed and evaluated medical evidence, relying on specific, legitimate, reasons supported by substantial evidence, the ALJ's decision must be upheld.

## A. The ALJ did not err by discrediting Boyer's symptom testimony.

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112. Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). An ALJ must make sufficiently specific findings "to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted). General findings are insufficient. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Courts may not second-guess an ALJ's findings that are supported by substantial evidence. *Id.* In making an adverse credibility determination, an ALJ may consider, among other things, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) the nature, severity,

and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).

Boyer alleges that his conditions limit his ability to engage in physical activities, including lifting, squatting, standing, reaching, walking, sitting, kneeling, and climbing stairs. AR 196. The ALJ found that Boyer's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but she nevertheless concluded that not all of Boyer's symptom allegations were credible. AR 31. The ALJ relied on two findings to support this conclusion. First the ALJ found that objective medical evidence does not fully support Boyer's alleged symptoms. AR 31–32. Second, the ALJ found that Boyer's reported activities are inconsistent with the alleged severity of his limitations. AR 32.

Boyer challenges both of the ALJ's reasons for rejecting his symptom testimony. Boyer first argues that the ALJ's finding that the objective evidence is inconsistent with the limitations Boyer alleges is not supported by substantial evidence. ECF No. 15 at 11. Boyer asserts that the ALJ ignored evidence showing serious symptoms and impairment. ECF No. 15 at 11. Boyer cites several instances in the record that he asserts demonstrate continuing serious symptoms, including his treating physician Dr. Hahn's decision to schedule cervical discectomy surgery in 2013, and Dr. Hahn's reports in 2014 that Boyer continued to have pain, numbness, tingling, and muscle spasms in his back, neck, and

several joints. ECF No. 15 at 11–15.

While Boyer is correct that there is some medical evidence in the record supporting his symptoms, there is also substantial objective evidence of only mild physical impairments. Indeed, the same exam reports that Boyer cites as supporting his continuing symptoms, also show that he had generally normal gait and strength, and good range of motion with only moderate back, neck, and joint pain and tenderness, AR 686, 766–67, 776–77, 780. Boyer simply offers a different interpretation of the medical evidence, but that is not a basis to reverse the ALJ's finding. Even where the evidence supports more than one rational interpretation, the court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *See Molina*, 674 F.3d at 1110. Because the ALJ's finding is reasonably supported by the record, it must be upheld.

Boyer next argues that the ALJ improperly relied on Boyer's daily activities to discredit his testimony. ECF No. 15 at 14–15. Daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony or (2) the "claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). However, "ALJs must

be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

The ALJ found that Boyer could care for himself, do household chores, use public transportation, shop, pay his bills, play the guitar, and use the internet. AR 32. Boyer argues that in making this finding the ALJ improperly relied only on a function report completed in October 2012, and did not rely on more recent information to explore whether Mr. Boyer continued to be able to do these activities. ECF No. 15 at 15. Boyer also argues that the ALJ failed to note that Boyer explained he did not have to do many of the physical aspects of working as a sound engineer. ECF No. 15 at 15. But again, Boyer simply offers an alternative interpretation of the evidence, and that is an insufficient reason to reverse the ALJ's decision. In addition to the report from 2012, the ALJ also relied on Boyer's testimony at the hearing that he continued to play bass guitar in a band, worked part time as a sound technician, helped in the garden where he was living, and could walk a mile or two, AR 64, 67–68, 72–73, and an April 2015 report that he helped care for a disabled friend. AR 746. The ALJ's finding that Boyer's daily activities are inconsistent with his symptom testimony is specific and supported

be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

The ALJ found that Boyer could care for himself, do household chores, use public transportation, shop, pay his bills, play the guitar, and use the internet. AR 32. Boyer argues that in making this finding the ALJ improperly relied only on a function report completed in October 2012, and did not rely on more recent information to explore whether Mr. Boyer continued to be able to do these activities. ECF No. 15 at 15. Boyer also argues that the ALJ failed to note that Boyer explained he did not have to do many of the physical aspects of working as a sound engineer. ECF No. 15 at 15. But again, Boyer simply offers an alternative interpretation of the evidence, and that is an insufficient reason to reverse the ALJ's decision. In addition to the report from 2012, the ALJ also relied on Boyer's testimony at the hearing that he continued to play bass guitar in a band, worked part time as a sound technician, helped in the garden where he was living, and could walk a mile or two, AR 64, 67–68, 72–73, and an April 2015 report that he helped care for a disabled friend. AR 746. The ALJ's finding that Boyer's daily activities are inconsistent with his symptom testimony is specific and supported

by substantial evidence.

The ALJ's findings that Boyer's symptom testimony is inconsistent with the objective medical evidence and his daily activities together constitute specific, clear and convincing reasons for discrediting his symptom testimony.

**B.     The ALJ properly considered and weighed the medical opinion evidence.**

In disability proceedings, "the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim*, 763 F.3d at 1160. An ALJ cannot reject a treating or examining physician's opinion, even if it is contradicted by another physician, without setting forth specific and legitimate reasons supported by substantial evidence. *Garrison*, 759 F.3d at 1012.

Boyer challenges the ALJ's consideration of the opinions of medical expert Dr. Lynne Jahnke, examining psychologist Dr. John Arnold, examining physician assistant John Colver, and reviewing physician Dr. J. Dalton, physician Christopher Goodwin, and agency psychological consultants Drs. John Robison and John Gilbert. The ALJ did not err in weighing and evaluating these opinions.

**1.     Medical expert Dr. Lynne Jahnke**

Boyer argues that the ALJ improperly gave greater weight to the testimony of medical expert Dr. Lynne Jahnke than Boyer's treating neurosurgeon Dr. Hahn

ORDER - 11

regarding Boyer's physical capabilities. ECF No. 15 at 15–16. Dr. Jahnke testified as a medical expert at Boyer's hearing. AR 48–54. She opined that he would be able to lift and/or carry up to fifty pounds occasionally and twenty-five pounds frequently, with no limitation on sitting, standing, and walking. AR 50. The ALJ found Dr. Jahnke's testimony generally consistent with Boyer's reported activities, but, importantly, gave her opinion only "partial weight" and found that Boyer was more limited than Dr. Jahnke indicated. AR. 32. There is no indication that the ALJ improperly weighed Dr. Jahnke's testimony or improperly rejected Dr. Boyer's opinions and treatment records, which the ALJ discussed extensively in determining Boyer's impairments at step two. AR 26–28.

**2.     Dr. John Arnold**

Dr. Arnold conducted a psychological exam of Boyer in February 2012. AR 303. Dr. Arnold opined that Boyer may have difficulty persisting on complex tasks, sustaining attention and concentration, and arriving for work consistently. AR 304. He also found that Boyer should be able to understand moderately complex instructions, maintain focus for short to moderate periods, and work with others. AR 304.

The ALJ gave little weight to Dr. Arnold's opinion because the ALJ found that Dr. Arnold's opinion was internally inconsistent. AR 28. The ALJ noted that that Boyer scored a 30 out of 30 on a mini mental status exam, and that Dr.

Arnold assigned a GAF score of 65, indicating only mild limitation in psychological, social, and occupational functioning. AR 304, 307. The ALJ found this was inconsistent with marked limitations in persisting in complex tasks, sustaining attention and concentration, and arriving at work on time. AR 28. Boyer argues that the ALJ overlooked that Dr. Arnold also found Boyer's insight was only fair and that he had symptoms of depression. AR 306, 308. Once again, Boyer simply advocates an alternative interpretation of Dr. Arnold's exam report. The ALJ's finding that the opinion was inconsistent is supported by substantial evidence.

### 3. Physician Assistant John Colver and Dr. J. Dalton

Boyer argues that the ALJ erred by giving too little weight to a physical evaluation by physician assistant John Colver in September 2012, and to the opinion of physician Dr. J. Dalton, who agreed with the evaluation. ECF No. 15 at 17–18. Colver examined Boyer in September 2012. AR 322. Colver opined that Boyer would have mild to moderate limitations from right knee pain and left shoulder pain and would be limited to sedentary work. AR 323–24. The ALJ gave this opinion little weight because she found that the opinion was internally inconsistent. AR 32.

Boyer argues that the ALJ's conclusion that the findings were internally inconsistent is not supported by substantial evidence. ECF No. 15 at 17. Boyer

argues that exam results showing flexion/extension of the left shoulder range of motion was significantly impaired, posterior glenoid tenderness, crepidis, positive impingement tests, and positive cross-body adduction, together with degenerative joint disease in the right knee, justify Colver's sedentary-exertion finding. ECF No. 15 at 17 (citing AR 323, 326, 329, 332). Boyer's interpretation of the evidence may be plausible, but the ALJ's finding here is supported by substantial evidence and must be upheld. As the ALJ explained, Mr. Cover's exam revealed some crepitus, but no evidence of atrophy in Boyer's shoulder, only mild crepitation in the right patella, and an otherwise normal evaluation. AR 32, 328–29. The ALJ also noted that imaging at the time showed no abnormalities in the left shoulder and only mild degenerative joint disease in the right knee. AR 32, 331–32.

### 3. Dr. Christopher Goodwin

Boyer argues that ALJ improperly gave no weight to the opinion of Dr. Christopher Goodwin, who evaluated Boyer in 2003. ECF No. 15 at 18–19. This opinion predates the relevant period by almost ten years, and is therefore of limited relevance, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The ALJ did not err by giving Dr. Goodwin's opinion no weight.

### 4. Agency psychological consultants Drs. John Robison and John Gilbert.

Boyer argues that the ALJ erred by relying on the testimony of agency

consulting experts Drs. Robinson and Gilbert, who opined that Boyer would have only mild limitations from his mental health symptoms. ECF No. 15 at 19. Boyer argues that a non-examining physician's opinion cannot by itself constitute substantial evidence that justifies rejecting the opinion of an examining or treating physician. ECF No. 15 at 19. But the ALJ does not rely on these opinions to reject the opinion of a treating or examining physician, and the "opinion of a nonexamining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ found that Dr. Robinson and Dr. Gilbert's opinions were consistent with treatment records and objective testing. AR 28. This finding is supported by substantial evidence, and the ALJ did not err by giving weight to these opinions.

## VI. CONCLUSION

For the reasons discussed, **IT IS HEREBY ORDERED**:

**1.** Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

**2.** The Commissioner's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

**3.** **JUDGMENT** is to be entered in the Defendant's favor.

**4.** The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 29th day of March 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER **-** 16